IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| ALPHONSON VERNELL FRAZIER II, | 8:20CV520 |
|---|---|
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| JUSTIN SMITH; ERIC JONES; ROBERT DELLUTRI; ADAM MOORE; JORDAN JACOBS; JORDAN BRANDT; NICHOLAS YARPE; ANGIE CIRCO; MARLENE NOVOTNY; and SCOTT FOX, in their individual and official capacities, | |
| Defendants. | |

Plaintiff filed his pro se Complaint (Filing 1) on December 22, 2020, and was granted leave to proceed in forma pauperis. The court conducted an initial review of Plaintiff's Complaint, and determined it was subject to preservice dismissal under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted. See Memorandum and Order dated February 9, 2021 (Filing 8). However, the court on its own motion gave Plaintiff leave to amend. Plaintiff's Amended Complaint (Filing 9), which was timely filed on March 11, 2021, will now be reviewed by the court to determine whether summary dismissal is appropriate.

On March 16, 2021, Plaintiff filed a Supplement to Amended Complaint (Filing 10). Because this supplemental pleading was not filed with leave of court and is unsigned, it will be stricken from the court file and will not be considered by the court in conducting its initial review of Plaintiff's Amended Complaint. *See* Fed. R. Civ. P. 11 & 15; NECivR 15.1.

## I. SUMMARY OF AMENDED COMPLAINT

Plaintiff claims he was subjected to illegal searches and seizures, and was twice unlawfully arrested.[1] He sues ten Omaha police officers in their individual and official capacities, alleging:

1. On January 11, 2017, Peter C. Jessen reports to Omaha Police Department RB#AJ37341 of him being followed on 90th Street by the Plaintiff in a blue truck. Jessen reports pulling over in the area of 91st and Sprague street and approaching Plaintiffs vehicle, the same man he claims to be afraid of and is after him. Jessen reports that Plaintiff pulled a knife on him and he retreated to his car and drove off. Witness Paul Miller states the he saw Jessen get out of the car and approach Frazier, saw Frazier punch Jessen and both parties get into their respective vehicle and drive off, but did not see any weapons.

2. Someday between January 11, 2017 and January 16, 2017, Defendant Angie Circo drafts a felony warrant affidavit related to January 11, 2017 events and presents it to a judge for authorization. See RB AJ-23248AA, dated February 21, 2017.

3. On January 13, 2017, Jessen applied for a protection order against Plaintiff.

4. On January 16, 2017, Defendant Defendant's [*sic*] learned by a data check that Plaintiff had a locate for a protection order.

5. On January 16, 2017, around 8:00 p.m. Plaintiff is illegally arrested by Defendants at his home … for terrorist threats under RB#AJ37341 while Plaintiffs DVR is filming without the awareness of the Defendants. Threatening that they will shoot through the door to kill

---

[1] This action is a partial revival of Case No. 8:18CV539, which Plaintiff filed on November 15, 2018, and which was dismissed without prejudice on April 23, 2019, for lack of prosecution. Other parts of that dismissed case were also revived in another action filed on December 22, 2020, Case No. 8:20CV519. That action was dismissed on the court's initial review on April 2, 2021.

him if he does not open up the door, Plaintiff opens the door and Defendants bum rush into Plaintiffs home, grab Plaintiff, and put Plaintiff in handcuffs. The Defendants entered the home and arrest Plaintiff without an arrest warrant or probable cause.

6. Sergeant Justin Smith seizes an 8-inch knife out of Plaintiffs home and takes Plaintiff outside the residence. RB[#]AJ37341

7. Defendant Sergeant Justin Smith calls Defendant Detective Angie Circo, who informs the arresting officers that there is only an affidavit for a warrant, not an arrest warrant.

8. The affidavit had not been signed or approved by any Judge.

9. Plaintiff requests to see an arrest warrant and search warrant. Defendants cannot and do not oblige.

10. Plaintiff requests that Defendants return items as they do not have a search warrant to seize items. Defendants do not oblige.

11. Plaintiff is locked in the back of one of Defendant's patrol units and transported to Douglas County Department of Corrections, 710 S. 17th St Omaha, NE 68102, where he is booked on a charge of Terroristic Threats.

12. On January 17, 2017, while being falsely imprisoned under RB# AJ37341, Plaintiff is served with the Jessen protection order, and is unable to request a hearing to defend himself against said protection order.

13. On January 19, 2017, a terroristic threats report generated under RB#AJ37341 was assigned to the felony assault unit.

14. On January 25, 2017, Plaintiff posts 10% of $50,000 ($5,000), and bonds out of jail from the illegal arrest made under RB#AJ37341.

15. On January 30, 2017, Plaintiff goes to visit Douglas County Attorney Don Kleine and shows him surveillance video footage from his phone of the Defendants illegally entering, seizing items, and arresting Plaintiff on January 16, 2017.

3

16. On January 30, 2017, Defendant Angie Circo drafted an arrest warrant for Plaintiff regarding arson, burglary of Jessen's office, felony stalking, and felony child abuse under RB#AJ242248. The felony warrant was approved and signed by a judge.

17. On January 30, 2017, Omaha Police Department came to home of Plaintiffs aunt …, and drew down guns and threatened to shoot him again, before placing him under arrest under RB#AJ242248. Plaintiff's phone containing the surveillance video application is seized and booked into property at that time.

18. On February 1, 2017, [Plaintiff's] soon to be ex-wife Jennifer Frazier made a court appearance in the ongoing divorce proceeding and gains approval to enter Plaintiff's home …. Plaintiff did not receive notice of this court hearing, as he was incarcerated. Plaintiff did not appear.

19. On February 3, 2017, Defendant Angie Circo receives a call from Plaintiff's wife Jennifer Frazier who tells her that she has obtained an ex-parte order allowing immediate access to the residence …. Defendant Angie Circo tells Frazier to stand by while she secures a search warrant.

20. On February 3, 2017, Defendant Angie Circo gets a search warrant for Plaintiff's home and is let in the home by Jennifer Frazier and begins removing/stealing items from the home. The Omaha Police Department Crime lab is in Plaintiff's home as well as Defendants Scott Fox, Sergeant Marlene Novotny, and Detective Angela Circo. The DVR containing the surveillance video of the January 11, 2017 illegal arrest and search is taken, as well as $50,000 cash- both of which were in the attic and outside of the search warrant's purview and not listed in any associated RB (034127, AH07172, AH40728, AH59516, AJ09148, AJ13578, AJ14423).

21. On or about February 7, 2017, CR 17-223, the case under RB#AJ37341 that Plaintiff was illegally arrested on without a warrant was dismissed by the state with prejudice.

22. On February 21, 2017, Defendant Angela Circo begins writing her fairytale police report dating back to "2015" under a Supplementary

4

Police report RB#AJ-23248AA, but the police report for the public is under AJ-23248.

23. On February 22, 2017, Plaintiff has a Preliminary Hearing in Douglas County Courtroom #625 under charges stemming from the second arrest under RB#AJ242248 where a charge of Terroristic Threats was bound over to Douglas County District Court, but 2nd Degree Arson, Burglary, Stalking, and Intentional Child abuse were dismissed due to lack of evidence.

24. On May 1, 2017, Plaintiffs house is sold $101,000.00.

25. On June 3, 2017, Plaintiff Bonds out of jail for the second time for 10% of $75,000 ($7,500), now homeless, divorced, searching for his assets and trying to figure out how to restore he and his son's life.

26. On January 18, 2018, Douglas County Deputy Attorney Jennifer K. Meckna requests that Judge Marlon Polk dismiss and seal case of the second arrest, under RB#AJ242248. The Honorable Marlon Polk grants request. The case is dismissed with prejudice.

27. On January 19, 2018, order to seal case is signed by Judge Friend (see) exhibit 44.

(Filing 9, pp. 4-6.)

## II. APPLICABLE STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

Liberally construing Plaintiff's Amended Complaint, this is a civil rights action brought under 42 U.S.C. § 1983 to recover damages for alleged violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects against "unreasonable ... seizures" of persons and property. U.S. Const. amend. IV. To establish a violation of Fourth Amendment rights under 42 U.S.C. § 1983, a plaintiff must show that a seizure occurred and that it was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

By suing the defendants in their official capacities, Plaintiff in effect is suing the City of Omaha. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). The City of Omaha is a "person" for purposes of 42 U.S.C. § 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978),

but, as was explained in the court's previous Memorandum and Order (Filing 8), to prevail on a § 1983 claim against the City, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Plaintiff's Amended Complaint does not contain any allegations showing that the alleged constitutional violations resulted from an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. The Amended Complaint therefore fails to state a claim upon which relief may be granted against the defendants in their official capacities. Thus, all official-capacity clams will be dismissed without prejudice.

With respect to individual-capacity claims, Plaintiff only identifies four of the defendants as having taken an active part in conducting searches and seizures or effecting his arrests: (1) Detective Angela (or Angie) Circo (see Filing 9, ¶¶ 2, 7, 16, 19, 20, 22); (2) Sergeant Justin Smith (see Filing 9, ¶¶ 6, 7); (3) Fire Investigator Scott Fox (see Filing 9, ¶ 20); and (4) Sergeant Marlene Novotny (see Filing 9, ¶ 20). "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017); *see Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (affirming dismissal of § 1983 complaint where pro se plaintiff "failed to allege facts supporting any individual defendant's personal involvement or responsibility for the violations). Thus, all individual-capacity claims alleged against the other six defendants will be dismissed without prejudice.

Plaintiff alleges that Detective Circo drafted an affidavit for an arrest warrant regarding his alleged January 11, 2017 assault upon Peter Jensen. (See Filing 9, ¶ 2.) There is no allegation of any wrongdoing in connection with this activity.

It is next alleged that police forcibly entered Plaintiff's home on January 16, 2017, seized personal property, and placed him under arrest, all without a warrant. It is specifically alleged that Sergeant Smith seized a knife from inside the house and escorted Plaintiff outside. It is further alleged that Sergeant Smith called Detective Circo and was informed by her that no warrant had been issued. As a ranking officer on the scene, Sergeant Smith presumably had the authority to order the release of Plaintiff and his property upon learning there was no warrant for Plaintiff's arrest or for a search of his residence. Plaintiff's allegations, liberally construed, are sufficient to state a plausible Fourth Amendment claim against Sergeant Smith.

The Fourth Amendment, applicable to the States through the Fourteenth Amendment, provides: "The right of the people to be secure in their persons ...

against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ... particularly describing the place to be searched, and the persons or things to be seized." The general rule is that "'Fourth Amendment seizures are "reasonable" only if based on probable cause' to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). "The Fourth Amendment prohibits a warrantless entry of a home by law enforcement officers unless the circumstances are within a reasonableness exception to the warrant requirement." *U.S. v. Clarke,* 564 F.3d 949, 958–59 (8th Cir.2009). For example, the Eighth Circuit has recognized a "reasonableness exception to the warrant requirement which allows a non-consensual, warrantless search of a home if the search is supported by probable cause and exigent circumstances." *Id.* at 959; *see also United States v. Hogan,* 539 F.3d 916, 922 (8th Cir.2008). No exigent circumstances are evident in this case, and the search was non-consensual, as Plaintiff alleges the police gained entry by threatening to shoot through his door. It is also well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Hannah v. City of Overland, Mo.,* 795 F.2d 1385, 1389 (8th Cir.1986). "An officer has probable cause to arrest a suspect without a warrant if the 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Arnott v. Mataya,* 995 F.2d 121, 124 (8th Cir.1993) (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)). Here, Plaintiff alleges he was arrested for a crime which allegedly occurred outside the officers' presence, five days earlier.

On January 30, 2012, Detective Circo allegedly obtained an arrest warrant for Plaintiff regarding arson, burglary of Jessen's office, felony stalking, and felony child abuse. Although these charges were later dismissed, Plaintiff does not allege

any facts to show that Detective Circo acted improperly in obtaining the arrest warrant.

The Warrant Clause of the Fourth Amendment requires that in order to obtain a warrant to make an arrest, a law enforcement officer must make a factual showing sufficient to constitute "probable cause." *See* U.S. Const., Amend. IV; *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Probable cause to arrest exists if "the totality of circumstances at the time of arrest is sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." *Williams v. Decker*, 767 F.3d 734, 742 (8th Cir. 2014). The required showing is "[a] probability or substantial chance of criminal activity"—not necessarily "an actual showing of criminal activity." *United States v. Smith*, 715 F.3d 1110, 1115 (8th Cir. 2013) (internal quotation marks and citation omitted). "A warrant based upon an affidavit containing deliberate falsehood or reckless disregard for the truth violates the Fourth Amendment and subjects the officer who submitted the affidavit to § 1983 liability." *Schaffer v. Beringer*, 842 F.3d 585, 593 (8th Cir. 2016) (quoting *Block v. Dupic*, 758 F.3d 1062, 1063 (8th Cir. 2014)).

On February 3, 2017, Detective Circo allegedly obtained a search warrant for Plaintiff's residence and police were let into the home by Plaintiff's wife. Again, there is no allegation of wrongdoing on Detective Circo's part in obtaining the search warrant. But it is further alleged that a DVR and $50,000 in cash were seized from the attic, and that these items were outside the search warrant's purview. Defendants who allegedly were present during the search included Detective Circo, Fire Investigator Fox, and Sergeant Novotny.

A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found. *United States v. Ross*, 456 U.S. 798, 820 (1982). In this case, the search was also being conducted with the consent of Plaintiff's wife, who was in lawful possession of the premises. The facts alleged in

the Amended Complaint fail to show that the officers acted improperly in searching the attic. However, the allegation that the DVR and cash were outside the warrant's purview is sufficient state a plausible claim for relief against Detective Circo, Fire Investigator Fox, and Sergeant Novotny.

"Even if a warrant facially satisfies the particularity requirement, the police violate the Fourth Amendment when the scope of the search exceeds what the warrant permits." *Riis v. Shaver*, 458 F. Supp. 3d 1130, 1177 (D.S.D. 2020), *appeal dismissed*, No. 20-1958, 2020 WL 6580487 (8th Cir. Aug. 17, 2020); *see Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant ..., the subsequent seizure is unconstitutional without more."). "Determining whether a search exceeds the scope of its authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case basis." *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019). "Accordingly, where a search warrant has been issued, the seizure of property outside the scope of that warrant is a Fourth Amendment violation only if the mistake in seizing the property was objectively unreasonable." *Mountain Pure, LLC v. Roberts*, 93 F. Supp. 3d 993, 1008 (E.D. Ark. 2015), *aff'd*, 814 F.3d 928 (8th Cir. 2016); *See Johnson,* 172 F.3d at 536-37 ("[T]he fact that [the officer] was in error does not in itself make the seizure unreasonable."). Moreover, officers executing a search warrant "are not obliged to interpret narrowly." *McClendon v. Story Cty. Sheriff's Office,* 403 F.3d 510, 517 (8th Cir.2005).

Finally, Plaintiff alleges that Detective Circo began writing a "fairytale" police report on February 21, 2017, but no facts are alleged to show that Plaintiff suffered any adverse consequences because of this report. Indeed, Plaintiff alleges that most of the criminal charges against him were dismissed the next day. Thus, no plausible claim for relief is stated.

## IV. CONCLUSION

For purposes of initial review only, the court finds that plausible Fourteenth Amendment claims are stated (1) against Sergeant Smith for the warrantless search of Plaintiff's home, seizure of personal property, and arrest of Plaintiff on January 16, 2017, and (2) against Detective Circo, Fire Investigator Fox, and Sergeant Novotny for the alleged seizure of a DRV and $50,000 in cash on February 3, 2017, as allegedly being outside the scope of the search warrant.[2] In all other respects, however, Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

IT IS THEREFORE ORDERED:

1. The Clerk of the Court is directed to strike Plaintiff's Supplement to Amended Complaint (Filing 10) from the court file as an unauthorized and unsigned pleading.

2. All claims against Defendants in their official capacities are dismissed without prejudice.

3. All claims against Defendants Eric Jones, Robert Dellutri, Adam Moore, Jordan Jacobs, Jordan Brandt, and Nicholas Yarpe in their individual capacities are also dismissed without prejudice.

4. This matter may proceed to service of process against Defendants Smith, Circo, Fox, and Novotny in their individual capacities only. To obtain service of process on these Defendants, Plaintiff must complete

---

[2] The court cautions Plaintiff that this is only a preliminary determination based solely on the allegations in the Amended Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

and return the summons forms that the clerk of the court will provide. The clerk of the court shall send four summons forms and four USM-285 forms to plaintiff, together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the clerk of the court. In the absence of the forms, service of process cannot occur.

5. Upon receipt of the completed forms, the clerk of the court will sign the summons forms and forward them together with a copy of the Amended Complaint (Filing 9) and a copy of this Memorandum and Order to the United States Marshals Service for service of process on Defendants. The Marshals Service shall serve the Defendant using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Fed. R. Civ. P. 4(e); Neb. Rev. Stat. § 25-508.01.

6. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[3]

7. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

8. Plaintiff is notified that failure to obtain service of process on the Defendant within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days

---

[3] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

after receipt of the summons to answer or otherwise respond to a complaint.

9. The clerk of the court is directed to set a case management deadline in this case with the following text: "**August 9, 2021**: service of process to be completed."

10. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

11. Because this non-prisoner case is proceeding to service of process, and at the direction of the court, this case is removed from the pro se docket. The clerk's office shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 11th day of May, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge